Filed 9/1/16  P. v. Taylor CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WILLIAM A. TAYLOR,<br><br>        Defendant and Respondent. | A146259<br><br>(San Francisco City & County<br>Super. Ct. Nos. 223904 & 224379) |

**I.**

**INTRODUCTION**

In this government appeal, the prosecution argues that the superior court erred in granting a Penal Code section 995 motion[1] to set aside three counts of the information charging respondent William Taylor with commercial burglary.  The superior court granted the motion based upon its conclusion the magistrate improperly took judicial notice of William Taylor's birth date, race, and gender from the court's computer information database which was not shown to be accurate or reliable.  We conclude the magistrate properly took judicial notice pursuant to Evidence Code sections 452 and 452.5, and we reverse.

---

[1]  All subsequent references are to the Penal Code unless otherwise identified.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Taylor allegedly committed two burglaries within six days of each other in March 2015. The first burglary, which is the subject of this appeal, occurred on March 17, 2015.[2] A suspect, alleged to be Taylor, entered the Wilkes Bashford store on Sutter Street in San Francisco by using a metal pipe to shatter a glass panel on the main entrance door. The police reviewed surveillance footage that showed the suspect using a mirror to smash a jewelry display case inside the store. The suspect took more than $100,000 worth of jewelry. A responding officer noticed in the surveillance footage that the suspect was not wearing gloves; the officer also observed possible latent fingerprints on the display case.

At the preliminary hearing, one of the police crime scene investigation unit (CSI) officers, Rosalyn Rouede, explained that she had lifted two fingerprints and two palm prints from the display case. There was no match for the fingerprints and one palm print, but the final palm print was a match to Taylor. A second CSI officer, Lyn O'Connor, conducted the analysis of the palm print from the burglary scene (exhibit four) to a "known print" for William Taylor with a birth date of May 14, 1977 (exhibit five). Sergeant O'Connor determined that the prints matched. Taylor's counsel objected that there was no foundation for the date of birth. O'Connor testified that Officer Rouede provided her with a name, date of birth, and RAP sheet number when she asked her to do the comparison. Sergeant O'Connor then identified the latent print envelope that contained the case number and the name William Taylor (exhibit four).

The prosecutor asked defense counsel to stipulate that the known prints (exhibit five) belonged to Taylor, and counsel declined. The prosecutor moved to admit them as a business record under Evidence Code section 1271. To lay a foundation, the prosecutor

---

[2] The second burglary, which is not at issue in this appeal, occurred on March 23, 2015. Taylor allegedly used a metal pipe to unlawfully enter the bicycle garage of a commercial building on Brannan Street in San Francisco. He attempted to steal a bicycle and was apprehended by the police.

asked Sergeant O'Connor if exhibit five was the type of document produced in the regular course of business in the CSI lab, and O'Connor answered "yes." Exhibit five was the known palm print of William Taylor printed from a certified printer in the CSI unit. The magistrate accepted the exhibit as a business record.

The prosecutor requested the magistrate take judicial notice of the docket in this case as to Taylor's name, date of birth, and RAP sheet number. The magistrate recognized its authority to take judicial notice, but stated it only had a "reconstructed file" that did not include the information. The magistrate stated: "I can only take judicial notice of what I see with my eyes, with those senses, and I don't have the date of birth before me. There might be some other document or court record that would accomplish the purpose. What do you want me to take judicial notice of?" The magistrate then asked the court clerk to access the court computer information database for the case number for the preliminary hearing. The magistrate asked the clerk if the date of birth was included in the court information and the clerk answered affirmatively, stating the date was May 14, 1977. The magistrate then asked if the race and gender were indicated, and the clerk responded that it was listed as a white male.

Defense counsel objected for lack of foundation because there was no indication of the reliability of the court records. The magistrate overruled the objection because it could "properly take judicial notice of the information without calling as a separate witness [, a] court information custodian or keeper of those records. The Court uses this information every single day and I am satisfied for the purpose of this preliminary hearing that it is proper to take judicial notice." The magistrate found that based on the court information with the date of birth, gender and race, that "the Defendant here who has always proceeded under this court number with that name is the person who provided Exhibit 5, which is in evidence, with the same name, same race, same gender, and same date of birth." The magistrate found that there was probable cause for the charges.

Initially, Taylor was charged separately with the two burglaries, but after the preliminary hearing, the prosecution made a motion to consolidate the Wilkes Bashford burglary with the second burglary of the Brannan Street garage. The court granted the

3

motion and the prosecution filed a consolidated information. The consolidated information charged the Brannan Street offenses in the first two counts: second degree commercial burglary in violation of section 459 (count one) and possession of burglary tools in violation of section 466 (count two). It charged the Wilkes Bashford offenses in counts three, four, and five: second degree commercial burglary in violation of section 459 (count three), grand theft in violation of section 487, subdivision (a), with an enhancement for theft exceeding $100,000 (count four), and possession of burglary tools in violation of section 466 (count five).

### *Section 995 Motion and Hearing*

Taylor filed a motion pursuant to section 995 (995 motion) to set aside counts three, four, and five of the information for lack of probable cause, and the superior court held a hearing on the motion. Taylor argued the magistrate improperly took judicial notice of "a vaguely-identified database" to provide Taylor's date of birth, race, and gender, and such "a procedurally loose method of identification should not establish probable cause." Taylor contended the unidentified computer database was not a reliable source. Further, the court clerk was not established as a public employee performing an official duty.

The prosecutor argued that looking at a computer screen is functionally the same as looking at a printed docket. A court can take judicial notice of its own docket in the case before it.

The court stated that the magistrate could take judicial notice of its own record under Evidence Code section 452, but the issue here was "the reliability and the truthfulness of the input and access of that information in the court system. And there is nothing in the record to reflect that there is accuracy in the manner in which it was put together, the way it was inputted, the way it was accessed or which database was accessed, than just saying it was the court computer." The prosecutor argued that the clerk could have printed out the minutes and handed them to the judge and under Evidence Code section 664, it would have been presumed correct. The court responded: "But 'could have.' Could have, would have, should have, the oldest saying. And it falls

4

short in this case." The court granted the 995 motion as to counts three through five of the consolidated information.

## III.

## DISCUSSION

" '[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court . . . sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer. [Citations.]' [Citation.]" (*People v. Superior Court* (*Lujan*) (1999) 73 Cal.App.4th 1123, 1127, quoting *People v. Laiwa* (1983) 34 Cal.3d 711, 718.)

The magistrate found there was probable cause and the prosecution had established that the William Taylor charged in the information, the William Taylor in court at the preliminary hearing, and the William Taylor who provided the palm print used to match him to the Wilkes-Bashford burglary were all the same person. Taylor was present in court and had appeared before this magistrate in the same courtroom in the same case on seven prior occasions. To confirm Taylor's identity, the court sought to use the official court records to establish his birth date, race, and gender.

Neither party disputes that the court could properly take judicial notice of this information. Rather, the disagreement is about whether the information provided from the court computer was accurate and reliable. Respondent argues while it is proper for a court to take judicial notice of official court documents, the magistrate could not rely "upon hearsay information contained on an unidentified computer database." The trial court similarly agreed that the magistrate could take judicial notice of a printout of the court's minutes or docket, yet found there was nothing in the record to support the reliability or accuracy of the record on the court computer. Respondent asks us to conclude there is a difference of legal significance between a court clerk reading information from the court's official records in open court to the magistrate and a court

5

clerk hitting the print function and printing out that same information and handing the printout to the magistrate. Whether the information is contained on the computer screen or in a printout, the accuracy and reliability of the court's computer system is the same. The information does not become more reliable simply because it is printed on paper or contained in a paper file.

Evidence Code section 452 provides that a court may take judicial notice of the records of "any court of this state" or "any court of record of the United States or of any state of the United States." (Evid. Code, § 452, subd. (d).) The court can take judicial notice of its own records in a pending case. (*People v. Cavanna* (1989) 214 Cal.App.3d 1054, 1058; *City and County of San Francisco v. Carraro* (1963) 220 Cal.App.2d 509, 527 ["A court may judicially notice its own records and proceedings in the same case."].)

The judicial notice of official court records includes computer-generated records. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1460 (*Duran*); Evid. Code, §§ 452, subd. (d), 452.5.) A court can take judicial notice pursuant to Evidence Code section 452 of the online dockets for a defendant's cases in other counties because they are the official acts and records of the courts of the state. (*People v. Mendoza* (2015) 241 Cal.App.4th 764, 773, fn. 1.) We note appellate courts also routinely take judicial notice of superior court's online dockets. (See *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 872, fn. 3.)

Both respondent and the superior court voiced concerns that the magistrate was relying on the content of information from the court computer system which came from an "unidentified database" not known to be accurate. The source of the information, however, was clearly identified as the court's file for the case before it. The magistrate stated: "I am going to ask my staff to access the court computer information database for the case number for this preliminary hearing 15007086. I am looking at Exhibit 5 which is already in evidence and it has a name, a race, a sex, a date of birth. No photograph is attached." The magistrate then stated: "In the court's database, Mr. Thompson[,] court clerk for this case, is a date of birth included in the Court information?" The court clerk responded "Yes it is, Your Honor," and the magistrate stated: "Date of birth please." The

6

clerk responded: "Date of birth listed on the computer is 05/14/77." At the request of the court, the clerk provided the gender and race as "white male." The magistrate then took judicial notice of the court information database as part of the court record.

"It is settled that a court may take judicial notice of the *contents* of its own records. [Citations.]" (*Dwan v. Dixon* (1963) 216 Cal.App.2d 260, 265, italics added.) A " 'court may properly take judicial notice of the truth of facts asserted in documents such as orders, findings of fact, conclusions of law and judgments.' " (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1565, quoting *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 46.) The magistrate could properly rely upon the court records to provide Taylor's date of birth, race, and gender. (See *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 383 [court could take judicial notice of a child's date of birth in a prior paternity pleading where the date of birth was not contained in the current complaint].)

Not surprisingly, the parties cite no cases addressing precisely the situation that arose here, but if courts can take judicial notice of computer-generated records and online docket information, there is no evidentiary impediment preventing a court clerk from orally providing this information to the magistrate in open court. Recording and reporting information from the court information system is one of the duties of a court clerk. (*Duran*, *supra*, 97 Cal.App.4th at pp. 1461-1462, fn. 5 [keeping minutes and preparing orders are "within the scope of a public employee's duty"].) "It is presumed that official duty has been regularly performed." (Evid. Code, § 664.) This presumption applies to the duties of clerks of court. (*Fergus v. Songer* (2007) 150 Cal.App.4th 552, 565.)

Further, the court's computer system confirmed information that was already known to the magistrate. William Taylor had appeared in this matter before the magistrate on at least seven prior occasions. (See *Duran*, *supra*, 97 Cal.App.4th at p. 1464 [minute order reflected information already known to the witness who had seen the defendant and reviewed his RAP sheet].) This familiarity bolsters the presumptive correctness of the information's accuracy.

Finally, any argument that the court's computer system is unreliable applies equally to viewing an electronic record as viewing a paper printout of the court's docket or minute orders. (See *People v. Martinez* (2000) 22 Cal.4th 106, 131-134 [rejecting argument that uncertified computer printouts of a defendant's criminal history lacked indicia of reliability].) Taylor has failed to present any evidence that the court computer information database is unreliable. As the magistrate explained, it used the information "every single day." In order for our system of justice to function, we must presume that court records are properly and accurately maintained. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070-1071.) And further, as outlined above, we presume judicial officers and court clerks properly perform their duties. (*Ibid.*)

The magistrate, therefore, could take judicial notice of information in the court's computer information database provided by the court clerk.

## IV.

## DISPOSITION

The judgment of the superior court is reversed.

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
RIVERA, J.


A146259, *People v. Taylor*

9